```
          IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


UNITED STATES OF AMERICA,

          Plaintiff,

     v.                                 CRIMINAL NO. 1:18CR50-3
                                                    (KLEEH)
SEDDRICK BANKS,

          Defendant.
```

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

Pursuant to Rules 33(a) and 29 of the Federal Rules of Criminal Procedure, Defendant has moved for a new trial and a judgment of acquittal [ECF No. 521].  The Government filed a response in opposition [ECF No. 540].  The Court heard argument on Defendants motions on January 24, 2023 [ECF No. 556].  For the reasons discussed herein, the post-trial motions are **DENIED**.

### I.  <u>BACKGROUND</u>

Following a seven-day jury trial, Defendant Seddrick Banks ("Defendant") was found guilty of the following offenses:

- Conspiracy to Possess with the Intent to Distribute and Distribution of Fentanyl, Cocaine Hydrochloride, or Methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii) (Count 1);

- Aiding and Abetting Possession with the Intent to Distribute Methamphetamine, in violation of 18 U.S.C. §

USA V. BANKS                                                      1:18CR50-3

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

2, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) (Count 3);

- Aiding and Abetting Possession with the Intent to Distribute Cocaine Hydrochloride, in violation of 18 U.S.C. § 2, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 4);

- Use and Carry of a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 6);

- Aiding and Abetting Possession with Intent to Distribute Fentanyl, in violation of 18 U.S.C. § 2, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi) (Count 7); and

- Accessory After the Fact to Distribution of Fentanyl Resulting in Death or Serious Bodily Injury, in violation of 18 U.S.C. § 3, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 11).

On July 6, 2021, prior to the jury's beginning its deliberations and at the close of the Government's case-in-chief, Defendant, by counsel, moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Defendant filed the pending post-trial motions on December 20, 2021 [ECF No.

USA V. BANKS                                              1:18CR50-3

## MEMORANDUM OPINION AND ORDER
## DENYING POST-TRIAL MOTIONS [ECF NO. 521]

521], and the Government filed its response on March 7, 2022 [ECF No. 540].

## II.  <u>APPLICABLE LAW</u>

Rule 33(a) of the Federal Rules of Criminal Procedure permits the Court to vacate a criminal conviction and "grant a new trial if the interest of justice so requires." However, "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence weighs heavily against it." <u>United States v. Smith</u>, 451 F.3d 209, 217 (4th Cir. 2006) (citation and quotation marks omitted).

Rule 29 of the Federal Rules of Criminal Procedure provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." A defendant who challenges the sufficiency of the evidence under Rule 29 faces an "imposing burden." <u>United States v. Martin</u>, 523 F.3d 281, 288 (4th Cir. 2008) (citing <u>United States v. Beidler</u>, 110 F.3d 1064, 1067 (4th Cir. 1997)). He must establish that "the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt." <u>Id.</u> at 277-78 (citing United <u>States v. Burgos</u>, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). When reviewing the

USA V. BANKS                                                1:18CR50-3

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

sufficiency of the evidence supporting a criminal conviction, courts are "limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support it." Beidler, 110 F.3d at 1067 (citation and quotation marks omitted).

The Court must uphold the jury's verdict if, when viewed in the light most favorable to the government, there is sufficient evidence from which "any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). It is the jury, and not the court, who "weighs the credibility of the evidence and resolves any conflicts in the evidence presented." Beidler, 110 F.3d at 1067 (citation omitted). Reversal of a jury's verdict of guilty is reserved for cases "where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978).

### III. DISCUSSION

Defendant argues that the Court committed a number of errors in its rulings before and during the trial. The Court will address each in turn.

**1.   The Court did not err when it denied Defendant's motion for change of venue.**

Defendant contends that the Court erred in denying his motion for change of venue. Federal Rule of Criminal Procedure 21 provides

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

that, "[u]pon the defendant's motion, the court must transfer the proceeding against a defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial."

The Court uses a two-step process in considering a defendant's motion for change of venue based on pretrial publicity.  First, it must determine "whether pretrial publicity was so extreme as to give rise to a presumption of prejudice," and, if so, grant the motion to change venue prior to trial. Taylor, 942 F.3d at 223. If pre-trial publicity does not give a presumption of prejudice then the Court must determine whether there was actual prejudice. Id.  In doing so, it must look to the responses of potential jurors during the voir dire process.  Id.; See United States v. Bakker, 925 F.2d 728 (4th Cir. 1991).  Only where voir dire reveals that an impartial jury cannot be empaneled would a change of venue be justified." Bakker, 925 F.2d at 728.

Prior to trial, Defendant moved for a change of venue based on the pretrial publication of the facts in this case [ECF No. 283].  Alternatively, Defendant requested permission to engage a consultant to study whether there was a hostile sentiment against him in the community by searching online coverage and surveying the jury pool. Id.  The Court denied Defendant's request for change

USA V. BANKS                                              1:18CR50-3

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

of venue but granted his request to retain a consultant [ECF No. 196].  It also granted Defendant's request to send supplemental pretrial juror questionnaires to the venire panel. Id.

At the pretrial conference, Defendant renewed his motion for change of venue [ECF No. 381].  After reviewing the information gathered by Defendant's consultant, the Court concluded that there was no hostile sentiment against Defendant in the community at large and denied Defendant's renewed motion [ECF No. 384].  The Court also reviewed the juror questionnaires and granted Defendant's motions to strike for cause 14 prospective jurors based on their responses. Id.

At trial, the Court conducted extensive voir dire with the venire panel and individual prospective jurors.  During this process, the Court struck an additional 15 prospective jurors for cause upon Defendant's motion.  At the close of voir dire, Defendant again renewed his motion for change of venue, which the Court denied.  Id. at 300:21-302:19.

The Court's efforts before and during trial ensured that Defendant was tried by a fair and impartial jury.  The data collected by Defendant's consultant indicated that the pretrial publicity of this case was not so extreme as to give rise to a presumption of prejudice.  The Court's pretrial questionnaire and extended voir dire with the venire panel and individual jurors

USA V. BANKS                                                  1:18CR50-3

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

then ensured that all prospective jurors had no independent
knowledge of this case and could be fair and impartial. Because
voir dire demonstrated that an impartial jury could be empaneled,
the Court did not err in denying defendant's motion for change of
venue based on pretrial publicity.

**2.   The Defendant was not deprived of his right to a speedy trial.**

Defendant claims that he was denied his right to a speedy
trial pursuant to the Speedy Trial Act, 18 U.S.C. § 3161 and the
Sixth Amendment.  The Court incorporates by reference its legal
analysis and conclusions in its Memorandum Opinion and Order
Denying Motion to Dismiss Pursuant to the Speedy Trial Action and
the United States Constitution [ECF No. 288].  The reasons stated
therein and for those that follow, the Court did not err in denying
Defendant's motion to dismiss.

**A.   Procedural History and Factual Background**

On September 4, 2018, law enforcement conducted a controlled
purchase of approximately one pound of methamphetamine in Room 202
of the Red Roof Inn in Fairmont, West Virginia.  The confidential
informant purchased the methamphetamine from Co-Defendant Terrick
Robinson ("Robinson").  After the purchase took place, Robinson
drove away from the hotel.  In addition to executing a federal
arrest warrant upon Robinson and a search warrant upon his vehicle,

USA V. BANKS                                              1:18CR50-3

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

officers executed a search warrant upon Room 202 of the Red Roof Inn. In Room 202, officers encountered Defendant and Co-Defendant William Gregory Chappell ("Chappell").

After learning the identities of Defendant and Chappell, law enforcement learned that there was an outstanding fugitive arrest warrant for Defendant from the State of Georgia.  Defendant was arrested and taken into state custody.  He made his initial appearance before the Magistrate Court of Marion County, West Virginia the next day.  After he waived his right to an extradition hearing, Defendant was extradited to Georgia on September 17, 2018.

On September 6, 2018, the United States filed federal criminal complaints against Defendant and Chappell.  A federal detainer was lodged against Defendant.  On October 3, 2018, the grand jury returned a six-count Indictment against Robinson, Chappell, and Defendant.  The charges related to distribution of drugs and possession of firearms. Robinson and Chappell were arraigned on the Indictment on October 9, 2018.  Defendant remained in Georgia on state charges.

On March 19, 2019, the grand jury returned an 11-count Superseding Indictment, adding multiple charges and a new defendant: Joel Jimenez ("Jimenez").  Robinson and Chappell were arraigned on the Superseding Indictment on March 27, 2019, and April 4, 2019, respectively.  Defendant, again, remained in

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

Georgia.  On October 22, 2019, the United States filed a Petition for Writ of Habeas Corpus Ad Prosequendum, requesting Defendant's appearance before the United States Magistrate Judge on November 20, 2019.  Counsel was appointed for Defendant on October 30, 2019. On November 20, 2019, the United States Magistrate Judge conducted an initial appearance and arraignment of Defendant on the Superseding Indictment.  The same day, the Court set trial in this action for January 7, 2020.

### B.   Speedy Trial Act

The Speedy Trial Act provides that a defendant's trial shall begin "within seventy days from the filing date (and making public) of the . . . indictment, or from the date the defendant has appeared before a judicial officer in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).  This 70-day period is subject to various exclusions, such as a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." Id. § 3161(h)(6).  It is well established that "[a]ll defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant." Henderson v. United States, 476 U.S. 321, 323 n.2 (1986).  "In a case involving several defendants, time excludable

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

for one defendant is excludable for all defendants." United States
v. Jarrell, 147 F.3d 315, 316 (4th Cir. 1998).

On November 20, 2019, Defendant appeared before a judicial
officer on the Superseding Indictment and trial was set for January
7, 2020 (within the 70-day window). His counsel then moved to
continue the trial, citing the need for more time to prepare. The
Court granted the motion and rescheduled the trial for March 23,
2020, excluding the delay from Speedy Trial calculation pursuant
to 18 U.S.C. § 3161(h)(7)(B)(iv). For those reasons, Defendant's
rights under the Speedy Trial Act were not violated, and he was
not entitled to dismissal of the Superseding Indictment against
him on that ground.

In his post-trial motion, Defendant contends that his speedy
trial clock should have started when he was arrested on September
4, 2018.  He contends that officers initially arrested him in
connection with the criminal complaint filed against him in this
case.  Then, upon learning of an outstanding warrant for his arrest
from Georgia, the officers "unarrested" Defendant on the criminal
complaint in this case and rearrested him on the Georgia warrant.

This argument misrepresents the timeline of events.
Defendant could not have been arrested on the criminal complaint
in this case on September 4, 2018, because it was not filed until
two days later.  Defendant was arrested instead on a fugitive

10

USA V. BANKS                                                   1:18CR50-3

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

warrant from Georgia.  He appeared in state court on this charge
the next day and waived his right to an extradition hearing.

Defendant alternatively argued that his right to a speedy
trial was violated because the Government allowed him to be
extradited to Georgia and failed to bring him before a federal
judicial officer for his initial appearance during the
approximately eleven days between the filing of the criminal
complaint and his extradition.  In support, he states that the
Government's conduct in this case is akin to that prohibited under
the "ruse" exception to the Speedy Trial Act.

"[T]he Speedy Trial Act includes a ruse exception in the
context of civil detention, such that the time limits of the Speedy
Trial Act are triggered when the 'primary or exclusive purpose of
the civil detention was to hold [a defendant] for future criminal
prosecution.'" United States v. Rodriguez-Amaya, 521 F.3d 437, 441
(4th Cir. 2008).  Because Defendant was not subject to civil or
administrative detention, the ruse exception does not apply to
this case.  Further, Defendant was not being held in Georgia
custody for the sole purpose of delaying this criminal prosecution.
Instead, he was being prosecuted and punished for probation
violations.  Nothing in the Speedy Trial Act requires the
Government to interrupt that process so that he could face the
charges against him in this District.

USA V. BANKS                                                    1:18CR50-3

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

### C.   Sixth Amendment

Defendant next argues that his right to a speedy trial under the Sixth Amendment has been violated for the same reasons. He contends that the Government should not have allowed him to be extradited to Georgia, should have brought him before a federal magistrate at some time in the eleven days between when he was arrested on the fugitive warrant and extradited to Georgia, or should have requested a Writ of Habeas Corpus Ad Prosequendum during his incarceration in Georgia so that he could appear on the charges against him in this District.

The Sixth Amendment to the Constitution of the United States provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"  This right is separate and distinct from a defendant's right under the Speedy Trial Act. See United States v. Woolfolk, 399 F.3d 590, 594-98 (4th Cir. 2005).  To establish a Sixth Amendment speedy trial violation, "a defendant first must show that the Sixth Amendment's protections have been activated by an 'arrest, indictment, or official accusation.'" United States v. Dixon, 542 F. App'x 273, 279 (4th Cir. 2013).  When such a qualifying event has happened, the Court then engages in a four-part test set forth in Barker v. Wingo, 407 U.S. 514 (1972):

(1)  whether the delay was uncommonly long;

USA V. BANKS                                          1:18CR50-3

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

(2)   the reason for the delay;

(3)   whether the defendant asserted his right to a
      speedy trial; and

(4)   whether the defendant suffered prejudice from the
      delay.

To prevail on such a claim, a defendant must "establish 'that
on balance, [the] four separate factors weigh in his favor.'"
United States v. Hall, 551 F.3d 257, 271 (4th Cir. 2009).  The
remedy for a violation of this Sixth Amendment right is dismissal
of the indictment. Barker, 407 U.S. at 522.

As to the first factor, a delay must be presumptively
prejudicial before the other factors need be examined. Id. at 530.
One year is the point at which courts deem the delay unreasonable
enough to trigger the Barker inquiry. Doggett v. United States,
505 U.S. 647, 652 n.1 (1992).  Here, Defendant's Sixth Amendment
right to a speedy trial was triggered by the filing of federal
charges against him on September 6, 2019.  This constitutes an
"official accusation" that activates the Sixth Amendment
protections.

When Defendant asserted his right to a speedy trial on
December 10, 2019, over 14 months had passed.  Defendant had been
incarcerated for the entire 14-month period, but from September 6,
2018, to November 20, 2019, Defendant was in Georgia custody.  Less

13

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

than one month of his incarceration had been in federal custody. Still, under the first Barker factor, the period of delay is per se unreasonable and triggers the rest of the Barker inquiry.

As to the second factor, "[t]he reasons for a trial delay should be characterized as either valid, improper, or neutral.  A valid reason for delay, is weighted in favor of the Government. Barker, 407 U.S. at 531. Id.  "Simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay." United States v. Grimmond, 137 F.3d 823, 828 (4th Cir. 1998).

As the Fourth Circuit discussed in United States v. Robinson, 55 F. 4th 390, 400 (2022), "[b]ecause the government was awaiting Georgia's prosecution of [Defendant], the reason for delay weighs in its favor.  It's immaterial whether, as [Defendant] argues, the government 'had the ability to secure [Defendant's] appearance and set a trial date.'" Id. at 400.  "The need to allow [Defendant] to be prosecuted by the State without interference by the federal government is an obvious reason to delay federal proceedings." Id. (internal quotation omitted).  This factor weighs in favor of the Government.

As to the third factor, the Supreme Court has noted that a defendant has a right to assert his right to a speedy trial, and "failure to assert the right will make it difficult for a defendant

USA V. BANKS                                                    1:18CR50-3

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

to prove that he was denied a speedy trial." Barker, 407 U.S. at 532. "The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Id. at 531. Here, neither Defendant nor his counsel asserted his right to a speedy trial until the filing of the motion to dismiss in October 2019. This factor weighs in favor of the Government. This is so despite the fact that his counsel was not appointed in this matter until October 30, 2019, and he might not have known how to assert such right without their guidance. See Grimmond, 137 F.3d at 829 (weighing factor in favor of the Government when the defendant failed to request federal counsel after being notified of the federal charges by way of detainer and having counsel on the state charges).[1]

As to the fourth factor, courts address prejudice "in the light of the interests of defendants which the speedy trial right was designed to protect." Barker, 407 U.S. at 532. The Supreme Court "has identified three such interests: (i) to prevent

---

[1] The Court also notes that Defendant could have triggered his right to a speedy trial under the Interstate Agreement on Detainers while incarcerated in Georgia. See Georgia Code § 42-6-20 et seq. "The IAD is a statutory set of procedural rules enacted to provide the prisoner with a method of clearing detainers lodged against him and to provide cooperative proceedings for temporary transfers of prisoners for purposes of trial on outstanding charges." Morrison v. State, 626 S.E.2d 500, 503 (Ga. 2006).

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id.

Here, Defendant asserts that the delay in his initial appearance foreclosed him from establishing an alibi for several of the dates in question. Defendant, however, provides no facts or explanation as to how the delay prevented him from doing so. Defendant also states that the delay gave the Government additional time to investigate and file a Superseding Indictment against him. He contends that had he made his initial appearance on the Indictment on September 4, 2018, his case would have been resolved before the Superseding Indictment was issued. Although the Superseding Indictment issued on March 19, 2019, the Government could have sought to supersede at any time. There is no reason to believe that it would not have been able to do so within 70 days from September 4, 2018. Thus, the Court cannot find that the delay in Defendant's federal trial caused him any prejudicial harm. This factor also weighs in favor of the Government.

On balance, the Barker factors favor the Government. Because Defendant could not meet his burden of showing the factors weigh in his favor, his right to a speedy trial under the Sixth Amendment was not violated, he was not entitled to dismissal of the

USA V. BANKS                                                          1:18CR50-3

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

Superseding Indictment against him on this ground, and the Court did not err.

**3.    The Court did not err when it denied Defendant's challenges of jurors for cause.**

Defendant argues that the Court erred by failing to strike multiple prospective jurors for cause, forcing Defendant to exercise peremptory strikes to remove the jurors from the panel. The challenged jurors either had some exposure to addiction and substance abuse, had family connections to law enforcement, or answered yes to questions 33[2] and 34[3] on the jury questionnaire.

Under the Sixth Amendment to the United States Constitution, a criminal defendant has the right to trial by an impartial jury. The trial court therefore must exclude those prospective jurors who cannot be impartial, or who cannot "lay aside [their] opinion and render a verdict based on the evidence presented in court." United States v. Turner, 389 F.3d 111, 117 (4th Cir. 2004) (citing Patton v. Yount, 467 U.S. 1025, 1037 n. 12 (1984)). "[U]nder our system it is [the trial] judge who is best situated to determine competency to serve impartially." Id. (citing Patton, 467 U.S. at

_____

[2] Question 33 stated, "Do any of you feel that if defendant is not guilty he or she should prove it?"
[3] Question 34 stated, "Do you feel that defendant must testify or present evidence before you could find him or her not guilty?"

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

1039).  Thus, its findings of impartiality are disturbed only upon finding that a "manifest error" has occurred. Id.

A party may strike a potential juror for cause where actual bias is shown. Person v. Miller, 854 F.2d 656, 664 (4th Cir. 1988). Striking a prospective juror for cause based on an implied bias is limited "to those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." Id.  Prospective jurors are presumed impartial, and the existence of a preconception is insufficient to rebut the presumption, if the juror can "lay aside his impression or opinion and render a verdict based on the evidence presented in court." United States v. Jones, 716 F.3d 851, 857 (4th Cir. 2013) (citing Murphy v. Florida, 421 U.S. 794, 800 (1975)).

There is no per se rule excluding jurors because of their associations with law enforcement or investigatory agencies.  See United States v. Umana, 750 F.3d 320, 342 (4th Cir. 2014) ("A juror's generally favorable impression of law enforcement does not necessarily amount to bias any more than does a juror's personal association with law enforcement."); United States v. LaRouche, 896 F.2d 815, 830 (4th Cir. 1990) ("[C]ase law . . . refuses to establish a per se rule excluding any person who had an association

MEMORANDUM OPINION AND ORDER
DENYING POST-TRIAL MOTIONS [ECF NO. 521]

with an investigatory agency."). Further, a family relation to law enforcement is not a circumstance from which bias may be implied. See United States v. Caldwell, 543 F.2d 1333, 1347 (D.C. Cir. 1974) ("Absent a specific showing of bias, a defendant accused of murdering a police officer is not entitled to a jury free of policemen's relatives."); United States v. Brewer, No. 1:12CR1, 2012 WL 4757894, at *5 (N.D.W. Va. Oct. 5, 2012) ("[T]he mere fact that . . . [the juror] once had a family member in law enforcement is plainly not one of the 'extreme situation[s]' in which bias may be implied.") (citation omitted), aff'd, 533 F. App'x 234 (4th Cir. 2013).

Likewise, there is also no per se rule excluding jurors who have been victims (or whose close relatives have been victims) of a crime similar to that with which the defendant is charged. United States v. Fulks, 454 F.3d 410, 433 (4th Cir. 2006). As such, there is similarly no reason to categorically exclude prospective jurors who have had some exposure to substance abuse and addiction in cases involving the possession or distribution of controlled substances. The fact that a prospective juror has been exposed to substance abuse or addition also is not one of the "extreme situation[s]" in which bias may be implied. Person v. Miller, 854 F.2d at 664. Still, of course, such jurors should be excused if their personal experience has led to an actual, demonstrated bias.

19

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

In this case, the Court solicited sufficient information from each prospective juror to ensure Defendant an impartial jury. Along with other avenues of inquiry, he specifically probed for bias with respect to exposure to substance abuse, connections to law enforcement, and affirmative answers to questions 33 and 34.

**a.    Prospective Juror R.K.**

Prospective juror R.K. indicated that several of her family members worked in law enforcement. Her son worked at a prison in Salem, West Virginia and would soon be leaving for a position in the Harrison County Sheriff's Office. Her brother worked for a federal prison in Morgantown, West Virginia. Her sister-in-law worked as a federal probation officer.

During individual voir dire, R.K. also disclosed that her nephew had died two months before due to drug overdose and that her niece and her niece's boyfriend were addicted to controlled substances. Trial Trans. at 170:11-174:4. Nevertheless, R.K. believed that she would be an impartial juror despite her personal experiences:

> THE COURT: . . . [C]onsidering these experiences you have shared with us, is there any reason that you are aware of that would make you unable or unwilling to serve as a fair and impartial juror in this case?
>
> PROSPECTIVE JUROR: No.
>
> THE COURT: Okay. Any reasons where you think you could not or that you would not set aside those personal

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

experiences and render a verdict in this case based solely on the evidence that was presented and the law as the Court instructs?

PROSPECTIVE JUROR: It's all by the evidence, absolutely.

THE COURT: Mr. Flower, any other questions?

MR. FLOWER: Ms. [K], as the Judge said, there are allegations in this case of distribution of multiple different drugs including methamphetamine, fentanyl, and cocaine base. Would those kinds of charges, given your nephew's history, would that cause you in any way to not be fair or impartial in this case? And the fact that there is going to be evidence of allegations of an overdose death in this case, would that cause you, with your nephew's history, to be -- not be fair and/or impartial?

PROSPECTIVE JUROR: No. No. No.

. . .

THE COURT: Okay. Ms. [K], we talked a little bit about each of the charges in this case. There is an allegation in this case we talked about, being an accessory after the fact. The government believes it's going to present evidence in this case where an individual, we mentioned her name, Courtney Dubois, overdosed on controlled substances and passed away. The government is going to present evidence that following her death, in an effort to conceal her death, that she was dismembered and her remains disposed of. Those are all allegations at this point of course. But considering that, and in light of your life experiences, is there any reason that you believe, yourself, either unwilling or unable to serve as a fair and impartial juror in this case?

PROSPECTIVE JUROR: No.

THE COURT: And, again, what I mean by that is reaching and rendering a verdict based solely on the evidence you hear in court and the law as instructed by the Court.

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

> PROSPECTIVE JUROR: I mean, you have to hear the evidence
> to base your decision.

Id. at 174:11-176:9.

R. K. repeatedly stated that she could serve as a fair and
impartial juror, rendering a decision based solely on the evidence
presented and the law as instructed by the Court.  As such, she is
presumed impartial.  Neither her family member's association with
law enforcement nor her prior exposure to substance abuse creates
a per se finding that she should be stricken for cause and
Defendant failed to demonstrate actual prejudice.  There was no
reason to strike her for cause, and the Court was not in error on
this issue.

### b.   Prospective Juror B.M.

Prospective juror B.M. indicated that he had friends and
family members who had dealt with substance abuse and addiction.
The Court conducted individual voir dire to determine if he could
nevertheless serve as a fair and impartial juror in light of this
experience:

> THE COURT: Okay. Just so you know, sir, this case
> involves allegations from the government of drug
> distribution. The government also believes it will
> present evidence to the jury in connection with drug
> distribution of an alleged drug overdose that resulted
> in death. Considering your personal experiences, and the
> evidence you are likely to hear during the course of
> this case, do you think that you would be able to set
> aside your personal experiences and whatever opinions
> you formed based on those experiences, put those to the

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

side, if you will, and serve as a fair and impartial
juror in this case, returning a verdict based solely
upon the evidence you heard in the courtroom and the law
as the Court instructs you?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: Okay. Do you think you would have any
preconceptions or notions that may cause you to lean one
way or another in terms of a verdict before you even
hear any of the evidence in this case?

PROSPECTIVE JUROR: No.

THE COURT: Okay. And you don't feel there is any reason
you cannot and would not be able to serve as a fair and
impartial juror?

PROSPECTIVE JUROR: Right.

Trial Trans. at 91:13-92:9.

Following this exchange, Defendant's counsel questioned B.M.
about his relationships with these friends and relatives and about
the ways in which he had been impacted by their substance abuse.
Id. at 92:10-95:20. The Court then asked B.M. again whether there
was any reason why he could not serve as a fair and impartial juror
in the case, and B.M. replied, "[l]ike I said, I have my own
opinions upon this, but it doesn't reflect anything of what I would
say as a juror. . . . I would be fair about it." Id. at 95:8-10,
12. Given his responses to thorough questioning by the Court and
Defendant, there was no reason to strike B.M. for cause, and the
Court was not in error on this issue.

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

    **c.    Prospective Juror Mr. D.**

Prospective juror Mr. D. indicated that his niece and her husband had dealt with substance abuse and that his daughter was caring for his niece's children as a result. During individual voir dire, the Court asked Mr. D if he could serve as a fair and impartial juror in the case in light of this experience, and Mr. D said, "I believe so." 112:10-16. Defendant's counsel questioned him about the impact that substance abuse had had on his daughter and his niece's children.

> MS. HAYNIE: Okay. So I guess just trying to just kind of pull all of this out, those experiences that you have seen those children go through, and then what your daughter has had to deal with taking on your niece's children, that is a lot, I mean, do those experiences -- would that -- would you be able to set that aside and listen to the evidence in this case?
>
> PROSPECTIVE JUROR: Yeah, I would try to. I mean, I know it's been hard on the kids. But, you know, I would try.
>
> . . .
>
> THE COURT: Okay. I will ask -- again, you have been kind enough to share with us your personal experiences – do you believe that you can serve as a fair and impartial juror in this case?
>
> PROSPECTIVE JUROR: I think I can, yes.
>
> THE COURT: And let me ask it more directly. What I mean by that, again, is considering everything that you have dealt with and still deal with in your personal life, do you believe that you would be able to set aside those experiences and your feelings about those experiences and render a verdict in this case based solely upon the

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

evidence you heard in the courtroom and the law as instructed by the Court?

PROSPECTIVE JUROR: I think so, yes.

Id. at 115:8-16, 115:23-116:10.

Based on this discussion, there appeared no reason to strike Mr. D. for cause, and the Court was not in error on this issue.

**d.   Prospective Juror T.R.**

Prospective juror T.R. indicated that her sister had been addicted to methamphetamine and alcohol for twenty-five (25) years. She also stated, however, that she last saw her twenty (20) years ago and had no contact with her for approximately two (2) years. Id. at 139:20-22. Following further probing into her relationship with her sister and other family members who had dealt with addiction, the Court asked T.R. if anything about this experience that would affect her ability to serve as a fair and impartial juror, and she responded, "I don't believe so." Id. at 143:1. Nothing indicated that T.R. would have been actually biased against the defendant based on her personal experience with addiction. Thus, there was no reason to strike her for cause, and the Court did not err.

**e.   Prospective Juror D.D.**

Prospective juror D.D. indicated that there was a history of substance abuse in her family and that her son currently struggled

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

with addiction and had faced criminal charges.  At the beginning

of individual voir dire, D.D. began talking about her son and

stated, "[n]ow you don't want me for a juror." Id. at 147:17-18.

After discussion with the Court regarding her experience, D.D.

unequivocally stated that she could serve as an impartial juror:

> THE COURT: . . . [W]hen we talk about asking if you could
> be a fair and impartial juror, you have had experiences
> that have obviously affected you and that is certainly
> understandable. But do you believe that you could take
> those experiences and leave those to the side while
> serving as a juror in this case –
>
> PROSPECTIVE JUROR: Yes.
>
> THE COURT: -- and render a verdict --
>
> PROSPECTIVE JUROR: On the evidence.
>
> THE COURT: -- based solely on the evidence you heard and
> the law that the Court provides to you?
>
> PROSPECTIVE JUROR: Yes, sir.

Id. at 150:20-151:9. She also explained her initial comment as

follows.

> MR. FLOWER: At the very beginning you said – I think you
> were crying a little, and you said that we wouldn't want
> you on the jury.
>
> PROSPECTIVE JUROR: Because I was so emotional about it,
> you know what I mean, when I came in and I was talking.
> Then I thought you would think that, oh, boy, she is so
> wrapped up in what he, Adam, has gone through. You know,
> but I think that with that, I have had a lot of different
> experiences in the road that he traveled in the last --
> he is 36 -- 18 years. It's been a lot of different
> emotions. Also, now this sounds really silly, on top of
> that, I -- my dog just passed away. This, and I am –

USA V. BANKS                                                    1:18CR50-3

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

THE COURT: It's not silly at all.
PROSPECTIVE JUROR: -- tearful off and on because I have
had plenty of time to sit in there. I am not displacing
the importance of this situation, but I was already –

THE COURT: We understand.

Id. at 151:12-152:3.

At the conclusion of this discussion, Defendant moved to strike T.R. for cause because she had become too emotional when discussing her son's substance abuse. Id. at 155:21-156:10. Because T.R. statedly clearly that she would be able to set aside her personal experience and render a verdict based solely on the evidence, there was no evidence that he was actually biased against Defendant. She further explained that she had become emotional because she got nervous speaking in front of others and had recently lost a pet. On this record, there was no reason to strike her for cause, and the Court did not err.

### f. Prospective Juror Mr. B

The Court conducted individual voir dire with prospective juror Mr. B based on his affirmative answers to questions 33 and 34 of the juror questionnaire. When asked about his responses he stated, "I mean the opinion is as if the defendant wanted to present himself on the stand, I think that is a viable option. I'm not saying it's recommended. If he wants to prove his innocence, I am for that." Id. at 212:25-213:3. The Court then explained the

USA V. BANKS                                                    1:18CR50-3

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

Government's burden of proof and Defendant's presumption of innocence.  Mr. B. stated that he understood and that he believed that he could serve as an impartial juror and apply the law as explained by the Court. Id. at 213:4-12.

In responding to questions posed by the Government, Mr. B again indicated that he understood that the defendant does not have to put on any evidence or provide his own testify to prove his innocence, that a defendant may opt to testify, and that a decision not to testify cannot be used against a defendant.  Id. at 213:25-214:13.

Defendant thoroughly questioned Mr. B about his answers to questions 33 and 34.  In response, he stated that he misunderstood the questions and that if after hearing all the evidence in the case he felt that the Government had not proven the defendant guilty beyond a reasonable doubt, but the defendant did not testify and did not present any evidence, would you still be willing to vote for a not guilty verdict. Id. at 217:21-218:9.

To summarize his beliefs, the Court asked a series of questions:

> THE COURT: Mr. B[], do you believe that a defendant must prove their innocence in order for you to find them not guilty?
>
> PROSPECTIVE JUROR: No.

28

USA V. BANKS                                              1:18CR50-3

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

---

THE COURT: Mr. B[], to be clear and, again, the reason we asked you those follow-up questions here is because of your responses to questions 33 and 34 in the questionnaire. Do you understand that a defendant throughout trial at all times is presumed innocent? Do you understand that?

PROSPECTIVE JUROR: I understand, yes.

THE COURT: That means a number of things. First and foremost, the government must prove guilt on each and every count in a criminal case beyond a reasonable doubt. Do you understand?

PROSPECTIVE JUROR: Yes.

THE COURT: Do you also understand that a defendant is under no obligation whatsoever to ever testify at a trial where charges are asserted against him or her?

PROSPECTIVE JUROR: Yes, I understand.

THE COURT: You also understand that a defendant is under no obligation whatsoever to produce any evidence in his or her defense or on his or her behalf in a criminal trial?

PROSPECTIVE JUROR: I understand.

THE COURT: Do you understand that a defendant can sit silent throughout a criminal trial resting solely upon the government's burden to prove his or her guilt beyond a reasonable doubt? Do you understand that?

PROSPECTIVE JUROR: Yes.

THE COURT: And do you understand, sir, that if a defendant chooses to remain silent and not present any evidence and not testify at all, that in no way can any of those things be used as a basis to find a defendant guilty on any criminal charge? Do you understand that?

PROSPECTIVE JUROR: I understand.

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

> THE COURT: And the opinions you expressed in response to
> questions 33 and 34 in the questionnaire, do you believe
> that those opinions that you expressed in writing under
> oath that you can set those aside and serve as a fair
> and impartial juror in this verdict, not only
> considering only the evidence presented in court but
> also importantly here in this context, following the law
> as it's instructed to you by the Court?
>
> PROSPECTIVE JUROR: Yes.

Id. at 219:19-221:9.

Based on this extended voir dire with Mr. B, there was no reason to strike him for cause, and the Court did not err.

### g.   Prospective Juror Ms. D

Prospective juror Ms. D gave affirmative answers to questions 33 and 34 of the pretrial juror questionnaire.  Individual voir dire established that she was capable of serving as a fair and impartial juror despite these responses:

> THE COURT: . . . And my question is -- you indicated
> that you held the opinion that a defendant, if they are
> not guilty, should prove it. Do you believe that you
> would be able to set that opinion aside, if that is your
> opinion, and render a verdict in this case as a fair and
> impartial juror based not only on the evidence you heard
> in the courtroom but also on the law as the Court
> explained the law to you?
>
> PROSPECTIVE JUROR: I think when I read that, I was kind
> of putting myself in that situation. If it was me and I
> was a defendant, I would do anything I could to prove
> that I was not guilty.
>
> THE COURT: But do you understand that the law places no
> such obligation on a defendant?
>
> PROSPECTIVE JUROR: Yes.

USA V. BANKS                                                    1:18CR50-3

## MEMORANDUM OPINION AND ORDER
## DENYING POST-TRIAL MOTIONS [ECF NO. 521]

THE COURT: Do you also understand, ma'am, that the law requires of jurors that they cannot penalize or hold against a defendant in returning a verdict, the exercise of their constitutional right to remain silent? Do you understand that?

PROSPECTIVE JUROR: Yes.

THE COURT: Let me ask it this way: If you were on the jury in this case and you believe that the government did not prove guilt in this case beyond a reasonable doubt, but the defendant did not prove they were not guilty, they didn't ask a question, the defendant didn't testify, the defendant didn't offer any evidence, the defendant -- no one said a word on the defendant's behalf, none of the defendant's lawyer said a word, in that scenario, again, if you thought the government didn't have sufficient evidence to prove guilt beyond a reasonable doubt, could you set aside whatever opinion you may have or what you may do on your own and follow the law and follow the evidence and render a not guilty verdict?

PROSPECTIVE JUROR: Yes.

Id. at 234:8-235:15. In light of this discussion, there was no reason to strike Ms. D for cause, and the Court did not err.

**h.  Prospective Juror D.M.**

Prospective juror D.M. gave affirmative answers to questions 33 and 34 of the pretrial juror questionnaire. During individual voir dire, the Court gave a detailed explanation of the Government's burden of proof and the presumption of innocence. D.M. stated that he had not known the law as it related to these topics when he answered questions 33 and 34 but had no issue applying the law as explained by the Court. Id. at 245:11-248:22.

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

There was therefore no reason to strike D.M. for cause, and the Court did not err.

 **i. Prospective Juror Mr. O.**

 Prospective juror Mr. O gave affirmative answers to questions 33 and 34 of the pretrial juror questionnaire.  During individual voir dire, the Court explained the Government's burden of proof and Defendant's presumption of innocence.  Mr. O stated that he had initially misunderstood the questions and the Court confirmed Mr. O's understanding of the law through a series of questions, including:

> THE COURT: Sure. The true test of the jury in this case is did the government meet its burden to prove guilt beyond a reasonable doubt. That is the test. The defendant doesn't have to do anything with respect to that test. They can. They can call witnesses. The defendant can testify. Lawyers ask questions, make arguments, any number of things. They don't have to do anything. And let's say that was the case where the defendant did not testify, did not present any evidence, the lawyers did not ask any questions. No one said a word on the defendant's behalf, but after hearing all the government's evidence you were not convinced that the government had proven guilt beyond a reasonable doubt, could you return a not guilty verdict in that scenario?
>
> PROSPECTIVE JUROR: Yes.

Id. at 253:18-254:6.

 Mr. O also indicted that he knew of Gino Guerrieri, a law enforcement witness in the case, because, in the course of his employment, he had delivered parts to Mr. Guerrieri and had

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

collected money from a business Mr. Guerrieri had been involved in. Id. at 254:19-255:5.  Mr. O also stated, however, that he no longer had contact with Mr. Guerrieri through his work and that he would not find Mr. Guerrieri to be any more credible than other witnesses based on these interactions. Id.

Based on this record, the Court finds again that neither his answers to questions 33 and 34 nor his remote connection to one of the witnesses in this case necessitated that he be stricken for cause. Because Mr. O was capable of serving as a fair and impartial juror, the Court did nor err on this issue.

**j.   Prospective Juror Mr. S**

Prospective juror Mr. S gave affirmative answers to questions 33 and 34 of the pretrial juror questionnaire.  During individual voir dire, the Court gave a detailed explanation of the Government's burden of proof and the presumption of innocence. Mr. S stated that he had not known the law as it related to these topics when he answered questions 33 and 34 but had no issue applying the law as explained by the Court. Id. at 256:21-260:7. There was therefore no reason to strike Mr. S for cause, and the Court did not err.

**k.   Prospective Juror C.W.**

Prospective juror C.W. gave affirmative answers to questions 33 and 34 of the pretrial juror questionnaire.  During individual

USA V. BANKS                                                    1:18CR50-3

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

voir dire, the Court gave a detailed explanation of the

Government's burden of proof and the presumption of innocence.

The Court then had the following discussion with C.W.:

> THE COURT: My initial question, Mr. Webber, is
> regardless of what your opinion may be or regardless of
> what you might do in that particular situation, do you
> believe yourself capable of setting that aside and
> limiting your verdict to the evidence you see and hear
> in the courtroom, and importantly here based on the law
> as the Court will instruct you?
>
> PROSPECTIVE JUROR: Well, I definitely would follow the
> law, but I do have those opinions.
>
> THE COURT: Sure. Okay. But do you understand that those
> opinions are not what the law is?
>
> PROSPECTIVE JUROR: Yes, I do.
>
> THE COURT: And do you believe yourself able and willing
> to set those opinions to the side and render a verdict
> based again on the evidence you hear and the law as the
> Court tells you what the law is?
>
> PROSPECTIVE JUROR: Yes.
>
> THE COURT: In other words, if after the evidence is
> finished and after I tell the jury what the law is, that
> if you did not believe that the government had proved
> guilt beyond a reasonable doubt, even if the defendant
> did not testify, even if the defendant did not offer any
> evidence, even if the defendant's lawyers didn't ask any
> questions, that simply because you did not believe or
> solely because you did not believe the government did
> not prove guilt beyond a reasonable doubt, then you could
> return a not guilty verdict?
>
> PROSPECTIVE JUROR: I would follow the law and obey what
> I was supposed to do, yes.
>
> THE COURT: Understood.

USA V. BANKS                                                    1:18CR50-3

## MEMORANDUM OPINION AND ORDER
## DENYING POST-TRIAL MOTIONS [ECF NO. 521]

Id. at 265:10-266:12. Given C.W.'s answers to the Court's inquiries, there was no reason to strike him for cause, and the Court did not err.

**4.    The Court did not err when it denied Defendant's motion for mistrial.**

At trial, the Government called Lieutenant Bryan Purkey, a member of the Greater Harrison County Drug and Violent Crime Task Force who investigated the crimes alleged in the Superseding indictment, as a witness. During his direct examination, counsel for the Government asked what action he took following the execution of a search warrant on September 4, 2018, and the following exchange occurred:

> Q. So that evening, did anything else happen in regards to the investigation?
>
> A. Just little stuff. Tried speaking with Mr. Chappell. Tried to speak to Mr. Robinson. Tried to talk with the people that were there. The evidence was collected at the room, from the car. Mr. Banks was arrested. There was an outstanding warrant for him entered in --

[Trial Trans. 411 at 13-19].

Defendant objected to Lieutenant Purkey's testimony related to his arrest and moved for a mistrial. The Court denied Defendant's motion for a mistrial but instructed the jury to disregard Lieutenant Purkey's answer. Defendant now argues that this ruling was erroneous.

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

A court should reverse its decision to deny a defendant's motion for a mistrial only in "the most extraordinary of circumstances" and only upon "a showing of an error that prejudiced the defendant's substantial rights." United States v. Hayden, 85 F.3d 153, 158 (4th Cir. 1996). In examining possible prejudice, a court must look at the complete record and consider the offending actions in light of the totality of circumstances as well as the following factors: "(1) the closeness of the case; (2) the centrality of the issue affected by the error; and (3) the district court's mitigating steps." United States v. Hans, 332 Fed. Appx. 116, *5 (4th Cir. 2009) (citations omitted).

Upon careful consideration of Lieutenant Purkey's testimony and the complete record, the Court concludes that it did not err in denying Defendant's motion for a mistrial. Defendant's guilt was unequivocally demonstrated by the evidence introduced at trial. Lieutenant Purkey's testimony about Defendant's arrest, was not central to the case but rather an off comment in a larger response to an open-ended question about his investigative process. And prejudice to Defendant was limited by counsel's immediate objection which prevented the jury from learning the reason for his arrest and by the Court's limiting instruction.

USA V. BANKS                                                          1:18CR50-3

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

5.   **The Court did not err when it overruled Defendant's objections to Lieutenant Purkey's testimony related to co-conspirator statements.**

Defendant argues that the Court erred in overruling his objection to testimony about Jimenez's statements to law enforcement officers in the State of Georgia. He asserts that this testimony was inadmissible hearsay offered for the truth of the matter asserted. He also contends that Jimenez's statements were inadmissible under the co-conspirator hearsay exception because the Government failed to establish that they were made in furtherance of the charged conspiracy.

At trial, Lieutenant Purkey testified Jimenez had reported the conspiracy between Defendant and Co-defendant William Chappell to law enforcement officers in Georgia. These officers relayed this information to Lieutenant Purkey, prompting him to begin an investigation into activities at a hotel room in Jane Lew, West Virginia.

The Court did not err in overruling the Defendant's objection to Lieutenant Purkey's testimony about the statements Jimenez made to Georgia officers. As discussed at trial, the Government did not offer this testimony for the truth of the matter asserted but rather as evidence of Lieutenant Purkey's state of mind at the time he learned that in investigation might be necessary pursuant to Federal Rule of Evidence 803(3). Further, the Government did

37

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

not offer this testimony as hearsay that would be admissible under the co-conspirator exception.[4]  It accordingly had no duty to establish that Jimenez's statements were made in furtherance of the charged conspiracy as Defendant now contends.

The Court also notes that "an out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken." See United States v. Davis, 918 F.3d 397 (4th Cir. 2019).  The Government intended to call, and did call, Jimenez as a witness to testify about his statements to Georgia officers.  Thus, when the Government questioned Lieutenant Purkey about Jimenez's statements it did so only to elicit testimony regarding the facts that prompted his investigative steps, a permissible purpose.

For these reasons the Court was not in error in ruling on this issue.  Even so, any error on this issue would not have affected Defendant's substantial rights and must be disregarded pursuant to Federal Rule of Criminal Procedure 52(a).

---

[4] Under Federal Rule of Evidence 801(d)(2)(E), a statement is not hearsay if the proponent can establish that "(i) a conspiracy did, in fact, exist, (ii) the declarant and the defendant were members of the conspiracy, and (iii) the statement was made in the course of, and in furtherance, of the conspiracy." United States v. Graham, 711 F.3d 445, 453 (4th Cir. 2013).

USA V. BANKS                                                    1:18CR50-3

### MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

6.  **The Court did not err when it overruled Defendant's objections to Lieutenant Purkey's "summary testimony."**

Defendant argues that the Court erred in overruling his objection to Lieutenant Purkey's "summary testimony" about the drug trafficking organization and the role he played in it. He contends that such testimony was inadmissible under Federal Rules of Evidence 702 and 611(a).

The Court did not err in overruling Defendant's objection. Lieutenant Purkey's testimony was admissible pursuant to Federal Rule of Evidence 611(a). On cross-examination, Defendant exhaustively questioned Lieutenant Purkey about Defendant's involvement and standing within the drug trafficking organization. This line of questioning opened the door to similar inquiry by the Government on redirect.

His testimony was also admissible under the rules of evidence pertaining to lay and expert witnesses. Federal Rules of Evidence 702 and 703 permit expert witnesses to offer opinion testimony based upon earlier trial testimony but prohibit experts from "simply summarizing the testimony of others without first relating that testimony to some 'specialized knowledge' on the expert's part." United States v. Johnson, 54 F.3d 1150, 1157 (4th Cir. 1995). Nevertheless, Federal Rules of Evidence 702 and 703 are irrelevant to Defendant's motion because the Government did not

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

offer Lieutenant Purkey as an expert witness or ask him to summarize previously admitted evidence or testimony at trial. Lieutenant Purkey's testimony was based upon his personal understanding of the drug trafficking organization which obtained over the course of his investigation. Such testimony is admissible under Federal Rule of Evidence 701.[5]

Even if portions of Lieutenant Purkey's testimony could be categorized as "summary testimony," it helped the jury understand of the complexity of the conspiracy in this case and ascertain the truth. This testimony was therefore properly admitted pursuant to Federal Rule of Evidence 611(a). See United States v. Johnson, 54 F.3d 1150, 1162 (4th Cir. 1995). Further, because Defendant had a substantial opportunity to cross-examine Lieutenant Purkey regarding the investigation he could not have been prejudiced by this testimony. Id.

7.    **The Court did not err when it admitted Government exhibits.**

Defendant argues that the Court erred in admitting Government Exhibits 7, 23O, 23N, 23M, 27, 28a, 28b, 23i, 23k. He asserts no

---

[5] Federal Rule of Evidence 701 permits a lay witness to give opinion testimony that is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

new arguments and incorporates the arguments previously made.  The
Court incorporates its previous rulings and finds herein that it
committed no error on this issue.

8.  **The Court did not err when it overruled Defendant's request**
    **for a limiting instruction pursuant to Rule 404(b).**

Jimenez testified at trial that he had met Defendant in
Georgia in early summer 2018, when Defendant delivered controlled
substances to him on behalf of Robinson.  In late June 2018,
Jimenez began traveling to West Virginia with Robinson for the
purpose of distributing controlled substances.  He was compensated
for his role in the conspiracy with cash and controlled substances.

Defendant requested a limiting instruction related to
Jimenez's testimony about Defendant's distribution of controlled
substances in Georgia because such activity occurred outside of
the Northern District of West Virginia and outside of the dates
alleged in the Superseding Indictment.  The Court held that the
testimony did not qualify as 404(b) evidence and denied the
request.  Defendant argues that this was in error or that the
testimony should have been excluded under Federal Rule of Evidence
403.

Federal Rule of Evidence 404(b) prohibits the introduction of
prior bad acts to demonstrate the defendant's propensity to commit
unlawful acts or to prove that the defendant has a character flaw

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

and is therefore more likely to have committed the crime with which he is presently charged. United States v. Davis, 657 F.2d 637, 639 (4th Cir. 1981).  Such evidence is admissible, however, "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." United States v. Barbara, 953 F.2d 639 (4th Cir. 1992).

Acts that are intrinsic to the charged offense, by contrast, "do not fall under Rule 404(b)'s limitations on admissible evidence." United States v. Denton, 944 F.3d 170, 186 (4th Cir. 2019).  Bad acts are intrinsic to the charged offense "when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." Id.  "[B]ad acts evidence is intrinsic when it is essential 'to the story of the crime' or provides context to the charged offense." Id. (citing United States v. Cooper, 482 F.3d 658, 663 (4th Cir. 2007).

The Court did not err when it denied Defendant's request for a limiting instruction because Jimenez's testimony does not implicate Rule 404(b).  Count 1 of the Superseding Indictment alleges that Defendant conspired with Robinson, Chappell, and Jimenez to possess with the intent to distribute and to distribute fentanyl, cocaine hydrochloride, or methamphetamine [ECF No. 54 at 1].  Jimenez's testimony relates directly to this charge.  He

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

explained how he and Defendant were introduced and their respective roles in the conspiracy as well as his own motivation for joining the conspiracy.  Because Jimenez's testimony about Defendant's acts in Georgia are intrinsically linked to charges against him in this case, the Defendant was not entitled to a limiting instruction under Rule 404(b).

Further, Count 1 alleges that beginning "on or about May 2018, an exact date being unknown," the defendants distributed controlled substances in Marion County, West Virginia "and elsewhere."  Jimenez testified that Defendant delivered controlled substances to him in early summer 2018 in Georgia.  Thus, Defendant's argument that his testimony described activity outside of the date and location alleged in the indictment lacks merit.  And, because the testimony's probative weight was not substantially outweighed by the danger of unfair prejudice, it should not have been excluded under Rule 403.

**9.   The Court did not err when it denied Defendants' objection to Government's rebuttal closing argument.**

During its rebuttal closing argument, counsel for the Government asked the jury "What would an innocent person do?"  The Court overruled Defendant's objection to this statement.  Defendant argues that the Court erred in doing so because the question was improper and substantially prejudiced his right to a

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

fair trial.  Specifically, Defendant contends that this remark was a comment on his right to remain silent as well as a request for the jury to stand in his shoes.

Courts apply a two-pronged test to determine whether a prosecutor's misconduct in closing argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Wilson, 135 F.3d 291, 297 (4th Cir. 1998).  The defendant must show (1) that the remarks were improper and (2) that the remarks "prejudicially affected the defendant's substantial rights so as to deprive [him] of a fair trial."  Id. at 299.  Several factors are relevant to the determination of prejudice, including: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. Id.

First, counsel's use of a rhetorical question during closing argument was not improper.  His remark was neither a comment on Defendant's right to remain silent or a request for the jury to stand in Defendant's shoes as he contends.  Rather, to rebut Defendant's closing argument, counsel asked the jury, based on

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

their commonsense consider how an innocent person might react when confronted with a dead body and then consider what Defendant's actions might indicate about his knowledge of the drug trafficking organization and the overdose of the victim in this case. Such use of hypothetical questions is not improper. See e.g., United States v. Lara, 23 F.4th 459, 480 (5th Cir. 2022) ("An 'attorney is entitled to urge the conclusions which the attorney thinks the jury should draw from the evidence.' In doing so, the Government may utilize rhetorical questions that are 'inferential in substance.' Such questions are not impermissible comments on a defendant's right to remain silent.").

Even if counsel's hypothetical question was improper, it did not infect the trial with unfairness. He did not attempt to mislead the jury or divert its attention. His remark was isolated to a brief portion of the Government's rebuttal closing argument. And, in light of the overwhelming evidence of Defendant's guilt, the Government's hypothetical question could not have swayed the jury's verdict or unfairly prejudiced him. The Court was not in error in ruling on this issue.

**10. The Court did not err with respect to its jury instructions.**

Defendant argues that the Court erred by refusing to give his instructions regarding 404(b) evidence, missing evidence,

45

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

informant witnesses, immunized witnesses, accomplice witnesses, and drug addicted witnesses. He also contends argues that the Court erred in overruling his objection to its CSI instruction and its instruction related to the buyer and seller relationship. On these challenges, Defendant asserts no new arguments and incorporates the arguments previously made. The Court incorporates its previous rulings and finds herein that it committed no error on this issue.

Defendant also argues that the Court erred by refusing to give his proposed instructions related to obstruction of justice and the "but-for cause" of death. These challenges require additional discussion.

This Court's duty in instructing jurors is to provide correct statements of the law that avoid confusing or misleading them. See United States v. Savage, 885 F.3d 212, 222-23 (4th Cir. 2018) ("[T]aken as a whole, the instruction [must] fairly state[] the controlling law."); United States v. Miltier, 882 F.3d 81, 89 (4th Cir. 2018) ("[T]he instructions construed as a whole, and in light of the whole record, [must] adequately inform[] the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the opposing party."). A district court's refusal to provide an instruction requested by a defendant constitutes reversible error only if the instruction "(1) was

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." United States v. Lewis, 53 F.3d 29, 32 (4th Cir. 1995) (citations omitted). The Court's jury instructions met these standards.

**A.    Defendant's Supplemental Jury Instruction No. 2**

Defendant argues that the Court erred by refusing to give his Supplemental Jury Instruction No. 2 regarding obstruction of justice as a lesser related offense:

> The Defendant, Seddrick Damond Banks, is charged in Count 1 of the Superseding Indictment with the offense of Conspiracy to Possess With the Intent to Distribute and Distribute Controlled Substances, Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Sections 846, 8421((b)(1)(A)(viii).

> If you find that the government has been unable to prove each and every element as to the offense of Conspiracy to Possess With the Intent to Distribute and Distribute Controlled Substances, Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Sections 846, 8421((b)(1)(A)(viii) beyond a reasonable doubt, you must find the defendant Not Guilty of that offense.

> However, you may then deliberate on the issue as to whether or not the United States has proven that the defendant has committed the lesser-related offense of Obstruction of Justice, in violation of Title 18, United States Code 18, Section 1519. In order for you to find

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

that the defendant, Seddrick Damond Banks is guilty of
the lesser-related offense of Obstruction of Justice, in
violation of Title 18, United States Code, Section 1519,
you must find that following:

> 1. The Defendant, Seddrick Damond Banks,
> 2. on or about September 4, 201, [sic]
> 3. knowingly altered, destroyed, mutilated, or
> concealed any tangible object
> 4. with the intent to impede, obstruct, or
> influence the investigation or proper
> administration of any matter within the
> jurisdiction of any department or agency of the
> United States.

See 18 U.S.C. §1519[.]

Def. Proposed Jury Instructions, ECF No. 451 at 1-2.

A "defendant is entitled to an instruction on a lesser
included offense if the evidence would permit a jury rationally to
find him guilty of the lesser offense and acquit him of the
greater." Keeble v. United States, 412 U.S. 205, 208 (1973). But
he "is not entitled to a lesser-included offense instruction as a
matter of course." United States v. Wright, 131 F.3d 1111, 1112
(4th Cir. 1997).

At trial, Defendant conceded that obstruction of justice was
not a lesser included offense to conspiracy to possess with the
intent to distribute and distribution of fentanyl. Rather, he
asserted that the Court should instruct the jury that obstruction
was a "lesser-related" offense to the conspiracy charge. He cited

USA V. BANKS                                                    1:18CR50-3

## MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

no case law to support this position and agreed that the offenses
of obstruction of justice and conspiracy to possess with the intent
to distribute and distribution of fentanyl shared no similar
elements. Therefore, the Court finds that it did not err in
denying his request for this instruction.

**B.   Defendant's Supplemental Jury Instruction No. 22**

Defendant next argues that the Court erred by refusing to
give his Supplemental Jury Instruction No. 22, a <u>Burrage</u>
instruction:

> In other words, the defendant cannot be found guilty of
> the crime of Accessory after the fact to Distribution of
> Fentanyl Resulting in Death or Serious Bodily Injury
> liable unless the ingestion of fentanyl is the "but-for
> cause" of C.D.'s death.
>
> <u>Burrage v. United States</u>, ___ U.S. ___, 134 S. Ct. 881,
> 882 (2014).

Def. Proposed Jury Instructions, ECF No. 445 at 3.

Count 11 of the Superseding Indictment charges Defendant with
being an accessory after the fact to distribution of fentanyl
resulting in death or serious bodily injury, in violation of 18
U.S.C. § 3, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). As relevant
here, the Court instructed the jury as follows:

> Seddrick Damond Banks is not charged with actually
> committing the crime of Distribution of Fentanyl
> Resulting in Death or Serious Bodily Injury. Instead, he
> is charged with helping someone else try to avoid being
> arrested, prosecuted or punished for that crime. A

49

USA V. BANKS                                                    1:18CR50-3

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

person who allegedly does this is called an accessory
after the fact.

. . .

The crime of being an accessory after the fact, as
charged against Seddrick Damond Banks in Count Eleven of
the Superseding Indictment, has three elements, which
are:

> One: that Terrick Robinson had committed the
> offense of Distribution of Fentanyl Resulting in
> Death or Serious Bodily Injury. To prove this
> element, the government must prove, beyond a
> reasonable doubt, that (1) Terrick Robinson
> intentionally transferred the fentanyl to C.D.; (2)
> at the time of the transfer, Terrick Robinson knew
> it was a controlled substance, and; (3) the
> fentanyl transferred by Terrick Robinson was an
> independently sufficient cause of death of C.D.;
>
> Two: that Seddrick Damond Banks knew that Terrick
> Robinson had committed the offense of Distribution
> of Fentanyl Resulting in Death or Serious Bodily
> Injury; and
>
> Three: after the crime of Distribution of Fentanyl
> Resulting in Death or Serious Bodily Injury had
> been committed by Terrick Robinson, Seddrick Damond
> Banks helped him, in order to prevent his arrest,
> trial or punishment.

With respect to the crime of Distribution of Fentanyl
Resulting in Death or Serious Bodily Injury, in
violation of Title 21, United States Code, Sections
841(a)(1) and 841(b)(1)(C), the government must prove
the unlawfully transferred fentanyl was an independently
sufficient cause of death of C.D. and not merely part of
a combination of factors which resulted in death.

Court's Jury Instructions, ECF No. 463 at 41-42.

During the charge conference, Defendant argued that this

instruction should include that the Government bore the burden of

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

proving that the victim's ingestion of fentanyl was also the "but-for cause" of her death. The Court denied the objection because the law allowed the Government to prove causation in one of two ways and its instruction reflected the theory of causation presented to the jury at trial. Defendant argues that this was in error.

The Fourth Circuit's decision in United States v. Robinson, is conclusive on this issue. In Robinson, the Government pursued the same "independently sufficient" theory of causation and presented the same evidence in support. The Court gave nearly the same instructions to the jury in both cases. On appeal, Defendant argued that the Court had erred because its instructions did not require to prove that the victim's ingestion of fentanyl was the but-for cause of her death. The Fourth Circuit found, however, that "the overwhelming evidence that [the victim's] death resulted from fentanyl supports liability under either theory of causation." United States v. Robinson, 55 F. 4th 390, 403 (2022). Thus, even if the Court's instruction was an error, substantial evidence existed for the jury to find that the Government proved that the fentanyl was the victim's but-for cause of death and Defendant is not entitled to acquittal or a new trial on this issue.

## MEMORANDUM OPINION AND ORDER
### DENYING POST-TRIAL MOTIONS [ECF NO. 521]

11. **The Court did not err when it permitted the Government to rely on Defendant's cell phone data.**

Although the issue was not briefed by the parties, during oral argument on his post-trial motions, Defendant argued that the Court erred in allowing the Government to introduce and rely on his cell phone location data as evidence of his movement in its case-in-chief.  He asserts no new arguments and incorporates the arguments previously made.  The Court incorporates its previous rulings and finds herein that it committed no error on this issue.

12. **There were no errors that cumulated and denied Defendant a fair trial.**

Defendant argues that the cumulative effect of the Court's errors contributed to his convictions on counts for 8which there was insufficient evidence and denied him a fair trial.  In the Court's view, Defendant has not shown that the Court made any errors.  Therefore, there was no cumulative impact of errors.

13. **The Court did not err when it denied Defendant's Rule 29 motion for judgment of acquittal.**

Defendant argues that the Court erred when it denied his Rule 29 motion for judgment of acquittal at the close of the Government's case-in-chief.  To the contrary, it is clear that the Government presented sufficient evidence to sustain the jury's conviction.  The Court incorporates its previous findings on the

USA V. BANKS                                                    1:18CR50-3

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 521]**

issue and finds that its ruling was not in error.

**IV.   CONCLUSION**

For the reasons discussed herein, Defendant's post-trial motions are **DENIED** [ECF No. 521].

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: February 6, 2023

_Tom S Kleeh_
_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA